Axel N. ELIASEN, et al., Plaintiffs,

v.

Frederic C. HAMILTON, et al., Defendants.

No. 81 C 123.

United States District Court, N.D. Illinois, E.D.

July 16, 1986.

Stephen C. Sandels, William P. Schuman, McDermott, Will & Emery, Chicago, Ill., for plaintiffs.

David B. Garten, Fred H. Bartlit, Jr., Kirkland & Ellis, Chicago, Ill., for all defendants.

Charles T. Newton, Jr., Larry R. Veselka, J. Hampton Skelton, Vinson & Elkins, Houston, Tex., for Johnie M. Ouzts.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This securities case is before us on plaintiffs' motion to review Magistrate Rosemond's ruling permitting the deposition of plaintiff's non-testifying expert. Memorandum Opinion and Order of Magistrate Rosemond (N.D.Ill. June 6, 1986) ("Order of Magistrate"). *See* 28 U.S.C. § 636(b)(1)(A). We affirm Magistrate Rosemond's order permitting defendants to take the deposition, but we limit the scope of that deposition.

### FACTS

During this litigation, plaintiffs retained two experts to assist them in preparing for trial. The first, H.J. Gruy & Associates ("Gruy"), is expert in the field of petroleum engineering. The second, Touche Ross & Co. ("Touche"), is expert in the valuation of oil and gas company stock. Plaintiffs will call an employee of Touche as its only testifying expert witness. Plaintiffs do not intend to call any person from Gruy as a witness at trial.

This case concerns the fair market value of Hamilton Brothers Exploration Company ("Hamilton") stock as of September 30, 1979. Touche did a fair market valuation study of Hamilton stock as of the critical date. Gruy made cash flow projections for certain Hamilton properties as of August 1, 1979. The Gruy report was shown to Touche for its evaluation and possible use in Touche's evaluation study. After review of the Gruy report, Touche declined to use or rely upon it.

Defendants have deposed Touche, and they have received the Gruy report.[1] They

---

1. We disagree with Magistrate Rosemond's observation that plaintiffs read *Heitmann v. Concrete Pipe Machinery,* 98 F.R.D. 740 (E.D.Mo. 1983), as requiring production of the report under these circumstances. Order of Magistrate at 2 n. 2. In fact, they produced the report to defendants because Magistrate Lefkow ordered them to produce it. While *Heitmann* can be read to require production of a non-testifying expert's report seen by a testifying expert regardless of whether the testifying expert relied on it, *see infra* note 5, it can also be read to

now seek documents from Gruy related to that report, and they also seek to depose an employee of Gruy, J.W. Wood.[2] Plaintiffs filed a motion to quash defendants' notice of Woods' deposition and for entry of a protective order prohibiting any discovery of Gruy. Magistrate W. Thomas Rosemond, Jr. denied the motion.

## DISCUSSION

Our review is pursuant to 28 U.S.C. § 636(b)(1)(A), which provides: "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." To the extent we reverse the opinion below, we do so under the "contrary to law" standard.

Federal Rule of Civil Procedure 26(b)(4) sets forth the conditions upon which facts known and opinions held by experts may be discovered. The federal rule applies to facts and opinions acquired or developed in anticipation of litigation or for trial, and it basically divides experts into those who will testify at trial, 26(b)(4)(A), and those who, though retained in anticipation of litigation, will not testify at trial, 26(b)(4)(B). The facts and opinions to which an expert is expected to testify, and the grounds for those opinions, are discoverable. The facts and opinions of non-testifying experts, however, are discoverable only upon a showing of exceptional circumstances. Specifically, Rule 26(b)(4)(B) provides:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only ... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to

obtain facts or opinions on the same subject by other means.[3]

Plaintiffs argue that because Gruy was an expert retained in preparation for trial, who will not be called as a witness, Rule 26(b)(4)(B) precludes defendants from obtaining discovery from Gruy beyond the production of the Gruy report. Plaintiffs further argue that defendants have failed to show the exceptional circumstances necessary to trigger the exception to the rule.

Defendants argue that we should deny plaintiffs' motion for three reasons. First, they argue that where, as here, a testifying expert communicates with or considers the report of a non-testifying expert, Rule 26(b)(4)(B) no longer applies to the non-testifying expert. Second, they argue that "exceptional circumstances" exist in this case. Third, they argue that some of the material they seek to discover is not covered by the expert witness provisions of Rule 26 because it concerns information acquired by Gruy prior to being retained by plaintiffs. We consider each of these arguments in turn.

### Rule 26(b)(4)(B) Protection

To determine whether the discovery is barred by Rule 26(b)(4)(B), the parties agree that there are primarily three cases we must consider: *Heitmann v. Concrete Pipe Machinery*, 98 F.R.D. 740 (E.D.Mo. 1983); *Delcastor, Inc. v. Vail Associates, Inc.*, 108 F.R.D. 405 (D.Colo.1985); and *Dunlop Tire and Rubber Corporation v. Pepsico*, No. 81 C 7079, Order (N.D.Ill. Apr. 29, 1985) (Jurco, Mag.) [Available on WESTLAW, DCTU database]; Transcript of Proceedings (N.D.Ill. May 6, 1985) (McMillen, J.); Memorandum Order (N.D. Ill. July 9, 1985) (Shadur, J.) [Available on WESTLAW, DCTU database]; Memorandum Op. and Order (N.D.Ill. July 31, 1985)

---

require production of such a report only if the testifying expert relied on it. We do not read plaintiffs' briefs to concede that *Heitmann* required them to produce the report.

**2.** A reference to Gruy is also a reference to Wood, and we use the pronoun "he" to refer to both.

**3.** The one other exception in Rule 26(b)(4)(B) concerns medical information under Rule 35 and is not applicable to this case.

(Shadur, J.) [Available on WESTLAW, DCTU database].

In *Heitmann,* the issue was whether to permit discovery of a report which had been prepared by a non-testifying expert (Baggerman) and was given to and relied upon by a testifying expert (Flanagan). The court held: "Because the Baggerman report became a part of the basis for Flanagan's opinion and because Flanagan is a testifying expert, this Court has authority and discretion to order the production of the Baggerman report under Rule 26(b)(4)(A)(ii)." *Heitmann,* 98 F.R.D. at 742.[4] The court further stated that "[d]efendant took the Baggerman report out of the coverage of Rule 26(b)(4)(B) when it voluntarily transmitted it to Flanagan and Flanagan relied on it in reaching his own conclusions." *Id.* at 743. We interpret this to mean that when the report became a part of the basis of the testifying expert's opinion, it fell within the meaning of the inclusive rule for testifying experts, 26(b)(4)(A)(ii), and only then did it fall out of the coverage of the exclusive rule for non-testifying experts, 26(b)(4)(B).

Similarly, in *Delcastor,* plaintiffs sought the report of one testifying expert (Lampiris) containing his observations after a mudslide and his opinions as to the cause of the slide. Another testifying expert (Cording) had read Lampiris' report and relied upon it to arrive at his own conclusions as to the cause of the mudslide. The court held that the Lampiris report was discoverable because Lampiris was a testifying witness. *Delcastor,* 108 F.R.D. at 408. As an alternative holding, however, the court held that because Cording, who was also expected to testify, had read and relied on Lampiris' report, the report was also discoverable on that basis under 26(b)(4)(A). *Id., citing Heitmann.*

The courts in *Heitmann* and *Delcastor* did not hold, nor could they, that the non-testifying expert had lost his Rule 26(b)(4)(B) protection. A non-testifying expert always retains his 26(b)(4)(B) protection. Rather, *Heitmann* and *Delcastor* held that otherwise protected material will be discoverable where the discovering party has a "different avenue to discover the disputed information." *Delcastor,* 108 F.R.D. at 408. *See Heitmann,* 98 F.R.D. at 742. In *Delcastor, Heitmann,* and here, the "different avenue" of discoverability is the reliance on the materials by a testifying expert, bringing them within the ambit of Rule 26(b)(4)(A)(ii).

■ The court in *Delcastor* also stated that the report was necessary to effectively cross-examine Cording, who had read and relied upon Lampiris' report. 108 F.R.D. at 408. Similarly, the court in *Heitmann* stated that discovery "is necessary to effective cross-examination by plaintiff of Flanagan, due to Flanagan's testimony that the Baggerman report was part of his input." 98 F.R.D. at 743. From this defendants argue, "Here as well, the Gruy report was 'part of [Touche's] input.'" This is true; the *report* was a part of Touche's input, but the matters defendants want to question Gruy's employee about at a deposition were not "part of Touche's input." They go beyond the scope of material considered by the testifying expert, and neither *Heitmann* nor *Delcastor* allowed discovery beyond the report considered by the testifying expert. In fact, in *Delcastor,* the court expressly refused to permit the deposition of the non-testifying expert because the objectives of the rule were "sufficiently satisfied by the production of the report." 108 F.R.D. at 410. Here too, we believe the objectives of the

---

4. Rule 26(b)(4)(A) provides:
   (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision

rule were sufficiently satisfied by production of the report.[5]

The *Dunlop* case is not to the contrary. In *Dunlop*, defendants noticed the deposition of a non-testifying expert (Salop) who had communicated with the testifying expert (Lave). Plaintiff sought to block the deposition under Rule 26(b)(4)(B), claiming that the testifying expert's report was his own and that he had not relied on any reports or opinions of Salop. Magistrate Jurco quashed the deposition subpoena and granted a protective order, holding that there was no showing that Lave's opinion "relied on or was based on or was the result of conversations with or on a reading of Mr. Salop's written theories.... [Lave's] opinion was his own, derived from both his own experience, as well as sources other than Mr. Salop." *Dunlop*, Order at 1 (N.D.Ill. Apr. 29, 1985) (Jurco, Mag.).

The defendants in *Dunlop* then objected to the protective order in a hearing before Judge McMillen. Although Judge McMillen did not think Magistrate Jurco's ruling was clearly erroneous, he nevertheless allowed Salop's deposition to be taken without an explanation of his ruling. *Dunlop*, Transcript of Proceedings at 13–14 (N.D.Ill. May 6, 1985) (McMillen, J.).

Two months later, after Salop's deposition had been taken and after the case had been transferred to Judge Shadur, defendants sought Salop's report. Judge Shadur instructed defendants to establish a better "predicate" for the proposition that Lave relied on the Salop report in reaching his opinions. *Dunlop*, Memorandum Order at 2 (N.D.Ill. July 9, 1985) (Shadur, J.) [Available on WESTLAW, DCTU database].

Judge Shadur subsequently held that there was not adequate support for the "predicate" in the report itself or in Lave's own statement as to the bases for his opinion. *Dunlop*, Memorandum Op. and Order at 3 (N.D.Ill. July 31, 1985) (Shadur, J.) [Available on WESTLAW, DCTU database].

■ We agree with plaintiffs that the four *Dunlop* rulings, at most, suggest that Salop's deposition was properly allowed only to determine the "predicate" of whether or not Salop had provided information to or had discussions with Lave which helped Lave to form his opinions. Here, that predicate has already been established. We know that Touche received the Gruy report, considered it, and rejected it. Defendants have seen the report, and they have had an opportunity to depose numerous Touche employees on their use of the report. *Dunlop* does not require anything further. The *Dunlop* rulings cannot be read to allow the deposition of a non-testifying expert on the reasons the testifying expert did or did not rely on his opinions or report.

Defendants argue that the scope of the predicate has not been sufficiently established. Defendants state that notwithstanding Touche's claims that it had no further contact with Gruy, they should be able to take Wood's deposition to discover if he also denies any further communications between the two experts. We reject this argument for the same reasons Judge Shadur denied the defendants the Salop report in *Dunlop*. Taking into account Touche's employees' denials under oath of

---

(b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

**5.** We agree that Rule 26(b)(4)(A)(ii) should not be limited to documents relied upon by the testifying expert in reaching opinions. *See* Order of Magistrate at 4–5; Defendant's Memorandum Opposing Motion to Quash the Gruy Deposition at 3–4. Documents considered but rejected by the testifying expert in reaching opinions may be equally necessary for effective cross-examination. *See Heitmann*, 98 F.R.D. at 743 (non-testifying expert's report necessary to cross-examination of testifying expert who relied on report). *See also In re IBM Peripheral*

*EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41 (N.D.Cal.1977) (purpose of rule 26(b)(4)(A)(ii) to promote effective cross-examination); *Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp.*, 74 F.R.D. 594, 595 (N.D. Miss.1972) (same); Advisory Committee Note to Fed.R.Civ.P. 26, 48 F.R.D. 497, 503, 504 (1970) (rule 26(b)(4) needed for effective cross-examination of expert trial witnesses). In fact, the documents considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him.

any further contacts with Gruy, the mere unsubstantiated possibility of further contacts is not enough to allow Gruy's deposition to be taken in its role as plaintiffs' non-testifying expert. *See Dunlop,* Memorandum Op. and Order at 3 (N.D.Ill. July 31, 1985) (Shadur, J.) [Available on WESTLAW, DCTU database]. *See also* Order of Magistrate at 3.

**Exceptional Circumstances**

We also reject defendants' assertion that there are "exceptional circumstances" here. "Exceptional circumstances" exist when "it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed.R. Civ.P. 26(b)(4)(B). The rule " 'has been construed to require as an exceptional circumstance, a basic lack of ability to discover the equivalent information on the part of the party moving for discovery.' " *Delcastor,* 108 F.R.D. at 409, *quoting Parker v. Carroll,* 20 Fed.R.Serv.2d 698, 700 (D.D.C.1974).

The question then becomes what constitutes the "same subject," or in the words of the *Delcastor* and *Parker* courts, the "equivalent information." If we read the words narrowly as defendants would have us do, the "same subject" or "equivalent information" would be "what methodology Gruy actually used and why." Under this interpretation, only Gruy could provide those answers. If we read the words broadly, as plaintiffs would have us do, the "subject" or "information" would be what methodology is proper to determine the value of oil and gas leases and why. Under this interpretation, defendants could seek these answers from its own experts.

We think the answer to this question is resolved by reference to the purposes of the rule. As stated by the courts which have considered the rule, it is designed "to promote fairness by precluding unreasonable access to an opposing party's diligent

trial preparation," *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984), "to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation," *Ager v. Jane C. Sturmont Hospital and Training School for Nurses,* 622 F.2d 496, 502 (10th Cir. 1980), and more specifically, "to prevent one party from utilizing the services of the opponent's experts by means of a deposition," *Barkwell v. Sturm Ruger Co.,* 79 F.R.D. 444, 446 (D.Ala.1978). *See also* Advisory Committee's Note to Rule 26(b)(4)(B), 43 F.R.D. at 235 (1967) (the rule "reflect[s] the fear that one side will benefit unduly from the other's better preparation").

Plaintiffs hired Touche. Plaintiffs hired Gruy. Plaintiffs chose to use Touche and not Gruy to testify. Even if we assume that plaintiffs chose not to use Gruy because he did not tell them what they wanted to hear, this is not only perfectly permissible, but as indicated above, the very purpose of the rule is to protect plaintiffs from having Gruy's testimony used by their opponent. Plaintiffs lost that protection as to the *report* because they gave it to their testifying expert, Touche. But they did not lose it as to testimony by Gruy. "The Rule was intended to prevent an advisor from becoming an involuntary witness." *Delcastor,* 108 F.R.D. at 408.

Gruy is an expert who has been "retained or specially employed" by plaintiffs in preparation for trial. Plaintiffs hired Gruy to prepare a report; plaintiffs furnished information to Gruy for the report; and plaintiffs paid Gruy for his services. This is all the rule requires for Gruy to become a "captured" expert. This is undoubtedly a harsh rule. It may be a bad rule. We could join in the voices already criticizing it as a bad rule. *See e.g., United States v. Meyer,* 398 F.2d 66, 76 (9th Cir. 1968); Note, *Discovery of Expert Information,* 47 N.C.L.Rev. 401, 406 (1969).[6] But

---

6. The court in *Meyer* criticized the rule by stating:
   [W]e do not believe that "fear that one side will benefit unduly from the other side's better preparation" (43 F.R.D. at 235) is a suffi-

cient justification for the application ... of a rule which would deny a litigant the testimony of a witness rejected by his opponent simply because his opponent reached the witness first and paid for his services.

this would not help defendants, because good or bad, it is the rule, and we must apply it as written. *See Schiavone v. Fortune,* 750 F.2d 15, 18 (3d Cir.1984) ("While we are sympathetic to plaintiffs' arguments, ... it is not this court's role to amend procedural rules in accordance with our policy preferences"), *aff'd,* —— U.S. ——, 106 S.Ct. 2379, 2382, 91 L.Ed.2d 18, 25 (1986) (*citing* this quote).

■ We therefore agree with plaintiffs that the subject at issue is what methodology is proper to determine the value of oil and gas leases in the market. For this, defendants could only depose Gruy as plaintiffs' expert under the "unusual circumstance" that there are no other available experts in the same field or subject area. *See Bailey v. Meister Brau, Inc.,* 57 F.R.D. 11, 14 (N.D.Ill.1972) (party seeking discovery must prove that opinions by others on the subject are unavailable). *See also Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984, 997 (D.C.Cir. 1980); *Delcastor,* 108 F.R.D. at 409; *Barnes v. City of Parkersburg,* 100 F.R.D. 768, 769–70 & n. 5 (S.D.W.Va.1984); *Mantolete v. Bolger,* 96 F.R.D. 179, 182 (D.Ariz. 1982); *Barkwell,* 79 F.R.D. at 446. Defendants do not claim, however, that no other valuation or petroleum engineering experts exist or are available to them. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2032, at 256 (1970) ("It is quite clear that [it will rarely be possible to make the required showing] and equally clear that [this] was deliberately intended by the draftsmen of the [rule].") (hereafter "Wright & Miller").

Defendants' proposed deposition of Gruy as plaintiffs' non-testifying expert is exactly the kind of discovery that Rule 26(b)(4)(B) is designed to prohibit. Accordingly, we will not permit plaintiff to depose Gruy on the work it did for plaintiff in this case or to obtain documents from Gruy which were part of their work for plaintiffs (but which were not seen by Touche).

**Rule 26(b)(4) Protection**

Defendants' final argument is that much of the material it seeks to discover is not covered by the expert witness provisions of Rule 26(b)(4) because it concerns information acquired by Gruy prior to its retention by plaintiffs. Tracking the language of Rule 26(b)(4), defendants argue that the rule protects only "facts known and opinions held by experts ... acquired or developed in anticipation of litigation...." They further state that Gruy used the same oil price projections and discount rates used in the report as early as 1979, years before plaintiffs retained Gruy.

Three courts have considered this argument in situations similar to this one, and all have agreed with defendants. In *Marine Petroleum Co. v. Champlin Petroleum Co.,* 641 F.2d 984 (D.C.Cir.1980), plaintiff sought to depose defendant's non-testifying expert, and plaintiff objected on Rule 26(b)(4)(B) grounds. The district court ruled that plaintiff could have "orthodox" discovery of facts known and opinions held by the expert prior to the time he began to work for the plaintiff on the litigation, but not with respect to information or opinions developed thereafter. *Id.* at 987, 991. The court of appeals affirmed. That court held that to invoke the protection of Rule 26(b)(4)(B), "the data sought must have been 'acquired or developed in anticipation of litigation or for trial.' " *Id.* at 990. *See also id.* at 992–93 (applying ruling to facts of that case); *id.* at 995 (summarizing ruling on rehearing).

Similarly, in *Barkwell v. Sturm Ruger Co.,* 79 F.R.D. 444 (D.Ala.1978), the court considered "whether, and to what extent, plaintiff can depose an expert presently employed by defendant who is not going to be called as a witness at trial." *Id.* at 445. The court first held that Rule 26(b)(4)(B)

*Meyer,* 398 F.2d at 76. Similarly, one commentator stated:

> The first party to reach and 'buy' an expert, because of the stringent showing required for discovery of non-testifying experts, would be able to suppress favorable findings of that expert simply by declining to offer his testimony at trial.

Note, 47 N.C.L.Rev. at 406.

applied and that "exceptional circumstances" did not exist. *Id.* at 446. The expert was therefore protected "from giving information acquired or opinions formed *subsequent* to his employment with Sturm Ruger." *Id.* (emphasis added). However, the court further found that "a portion of the opinions developed by [the expert] Hillberg were developed prior to his association with defendant and are routinely discoverable." *Id.* The court explained,

> Rule 26(b)(4)(B) by its very terms applies only "to facts known and opinions held by experts ... acquired or developed in anticipation of litigation...." Hence, that subdivision does not apply to facts known or opinions held which were not acquired or developed in anticipation of litigation. The materials submitted establish that much of Mr. Hillberg's information was acquired prior to his retention by Sturm Ruger. This material is discoverable without regard to Mr. Hillberg's status as an expert.

*Id.* (citations omitted).

Finally, in *Grinnell Corp. v. Hackett*, 70 F.R.D. 326 (D.R.I.1976), defendant sought to depose plaintiff's experts on a study they had conducted and published prior to the litigation.[7] The court held: "Where, as in the case at bar, the facts or opinions sought were not prepared for litigation or trial, there is little support for a finding that freely permitting discovery would result in any unfairness to the opposing party." *Id.* at 333.

■ We agree with the courts in *Marine Petroleum, Barkwell,* and *Grinnell* that an expert may be deposed about information acquired or opinions formed prior to his employment by a party. Experts are hired as experts because they know facts and hold opinions in a specific field prior to

being retained. While the expert's pre-established facts and opinions will often be hard to distinguish from the "acquired and developed" ones, we think the purpose of the rule is to protect from discovery only those facts and opinions the expert has acquired and developed for the client who hired him in anticipation of litigation or for trial. *See supra* pp. 401–02.

We are concerned about how implementation of this distinction will work in practice. *See infra* note 9. But no matter what practical difficulties may be encountered, there could be no justification for barring testimony concerning facts and opinions not developed in connection with the particular case. Moreover, this interpretation of the rule appears to be the only way to stop parties from hiring experts and then electing not to use them as witnesses for the sole purpose of keeping their expertise completely out of the reach of their opponents.[8]

Defendants therefore may ask Gruy about the methodology, price projections, and discount rates Gruy was using prior to being retained by plaintiffs, but they cannot inquire about the Gruy report, the preparation of the Gruy report, information in the report, whether the proper valuation date was used in the report, or whether it was proper for Gruy to use their methodology, price projections, and discount rates for that report.

Plaintiffs correctly point out that the defendants' document request to Gruy specifically seeks and is expressly limited to documents "in connection with or relating to this litigation." The document request is therefore quashed. But this does not prohibit defendants from proceeding with the Gruy deposition on the pre-litigation issues delineated here.[9]

---

7. The report was introduced as an exhibit and these experts testified at the preliminary hearing. *Grinnell,* 70 F.R.D. at 329. The opinion in *Grinnell* is not clear on whether the experts were to testify at a subsequent trial. In any event, the court did not need to decide whether these experts were testifying or non-testifying experts because it held that deposition questions

to them about their study fell outside the protection of Rule 26(b)(4). *Id.* at 331–33.

8. There is no suggestion that this was plaintiffs' purpose in hiring Gruy in this case.

9. This is not to be a fishing expedition to catch Gruy in its role as plaintiffs' expert. Regrettably, because of the long history of discovery

Finally, under the authority of Rule 26(b)(4)(C), we will require the defendants to pay Gruy a reasonable fee for time spent in responding to the discovery.[10] Although Rule 26(b)(4)(C) is silent on whether it applies to a deposition covering facts known and opinions held by an expert prior to being retained, we believe the intent of the rule applies equally to such a case because "[t]he information will be of direct value to discovering party's preparation of his case...." Advisory Committee Note to Rule 26(b)(4)(C), 48 F.R.D. at 505 (1970); *see* 8 Wright & Miller § 2034, at 260.

## CONCLUSION

Plaintiffs' motion to review Magistrate Rosemond's Order is granted. We affirm that order to the extent it permits the deposition of Gruy's employee, J.W. Wood. Defendants may inquire into the facts known and opinions held by Woods prior to Gruy being retained by plaintiffs, but they may not inquire about facts known and opinions held subsequent to Gruy being retained by plaintiffs. Magistrate Rosemond's Order as to fees and costs is affirmed. Defendants are to pay Gruy a reasonable expert witness fee for Woods' time spent in responding to the discovery.

disputes in this case, we can already envision the parties before a Texas district court on an emergency motion within the first minutes of Gruy's deposition, squabbling over which questions are permissible and which are not. We are apprehensive both that defendants will ask impermissible questions and that plaintiffs will object to permissible ones. We admonish the parties to follow the guidelines of this opinion because appropriate sanctions will be imposed for failure to comply.

**10.** Rule 26(b)(4)(C) provides:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) of this rule the court may require, and with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.