Jesus H. DOMINGUEZ, Plaintiff,

v.

SYNTEX LABORATORIES, INC., Defendant.

No. IP 90–152–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 12, 1993.

Henry J. Price, Price & Barker, Indianapolis, IN, Mary J. Hoeller, for plaintiff.

Ralph A. Cohen, Kevin R. Knight, Ice Miller·Donadio & Ryan, Indianapolis, IN, for defendant.

### *ENTRY ON DISCOVERY*

ENDSLEY, United States Magistrate Judge.

Several matters outstanding before the Court are now ripe for review: plaintiff's "Motion to Compel Production of Documents", and defendant's "Motion to Compel Discovery", "Motion for Determination of Reasonable Expert Witness Fees", and "Motion to Compel Production of Expert Witness Documents, Or in the Alternative, Motion in Limine." The Court having reviewed each motion, the briefs and exhibits in support and opposition, and the record, shall address each motion on its individual merits.

### PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This motion has been rendered MOOT by the December 11, 1992, jointly-filed "Report To Court" and the stipulation respecting discovery approved by this Court on January 15, 1993.

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

The motion as it concerns defendant's supplemental interrogatories to plaintiff is now MOOT. *See* plaintiff's Exhibit H.

Regarding defendant's request for production of documents, the parties have designated two categories of documents at issue: (1) Records from the University of Cincinnati concerning an examination and evaluation of plaintiff done by non-testifying experts (Request Three); (2) Documents in the file of or shown to Dr. Weisberger, an expert expected to testify for plaintiff (Requests Two and Four).

## CINCINNATI RECORDS

### *Rule 26(b)(4): In Anticipation of Litigation*

■ First, defendant claims Rule 26(b)(4) of the Federal Rules of Civil Procedure (hereinafter "Rule") does not apply to the Cincinnati records because they were not acquired or developed in anticipation of litigation. If so, they would be discoverable as any other document under Rule 26(b)(1). Rule 26(b)(4)'s introduction limits its application to facts and opinions, acquired or developed in anticipation of litigation, which can only be discovered by following the procedure set out in the rule. Defendant claims plaintiff went to the Cincinnati doctors for medical treatment rather than in preparation for litigation. Defendant reasons that plaintiff's insurance paid in part for the visit and that the insurance company would not have paid if the visit was solely a litigation-related expense; therefore, the visit was not solely litigation-related. However, defendant has no evidence the insurance company does not pay for litigation-related expenses. Furthermore, even if the insurance company does not pay for what it considers "litigation-related", the private insurance contract definition of "litigation-related" may or may not approximate the legal definition of "in anticipation of litigation." As arranged by his attorney at the time, plaintiff visited the Cincinnati doctors after filing this action, in part, to quantify plaintiff's loss. (Plaintiff's Ex. B). Therefore, the Cincinnati visit occurred in anticipation of litigation and comes within the ambit of Rule 26(b)(4).

### *Rule 26(b)(4)(A)(ii): Additional Discovery*

Plaintiff originally objected to the Cincinnati records request on the basis of both Rule 26(b)(3) and Rule 26(b)(4). As defendant correctly points out, however, expert information is not within the work-product doctrine of Rule 26(b)(3). Fed.R.Civ.P. 26, notes of advisory committee on rules, 1970 amendment. Subsequently, both parties have focused solely on Rule 26(b)(4) [1] regarding the Cincinnati records.

■ Defendant asserts paragraph (B) of Rule 26(b)(4) does not apply to the Cincinnati records because Dr. Hirsch, an expected ex-

1. Rule 26(b)(4) provides:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(C) Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivision (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(A)(ii) of this rule the court may require, and with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

pert witness for plaintiff, received and considered the records. Therefore, pursuant to Rule 26(b)(4)(A)(ii) defendant requests discovery of the records. Paragraph (A)(i) applies only to interrogatory discovery of the facts and opinions of the testifying expert.[2] Plaintiff need only give a "summary of the grounds for each opinion" of the testifying expert. Nothing in the explicit language of the rule requires plaintiff to present defendant all evidence supporting or contrary to the expert's testimony. Such a reading would be counter to the intentionally limited nature of the rule to protect plaintiff from a defendant feeding off plaintiff's expert, rather than doing its own work. Fed.R.Civ.P. 26, notes of advisory committee on rules, 1970 amendment. However, part (ii) allows the Court in its discretion to order discovery beyond and by other means than allowed in part (i). The Court must look to case law for guidance as to when additional discovery is appropriate.

■ "It is unclear what standard of need must be established to obtain further discovery." 2 Shepard's, *Discovery Proceedings in Federal Court* § 16.22 (2d Ed.1991); *Hoover v. United States Dept. of Interior*, 611 F.2d 1132 (5th Cir.1980). This Court agrees with *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41 (N.D.Cal. 1977), in that the Court's task in ruling on a motion for further discovery under Rule 26(b)(4)(A)(ii) is merely to satisfy itself that the procedure is not being abused. Abuse of the procedure involves discovery of matters outside the scope of Rule 26(b)(4)(A)(i) which are not essential to the effective cross-examination of an expert witness. The question in this case then becomes whether the Cincinnati records are essential to the cross-examination of Dr. Hirsch.

The leading case in this Circuit, *Eliasen v. Hamilton*, 111 F.R.D. 396, 399 (N.D.Ill.1986), which analyzes other similar cases on this matter, is cited by defendant for the proposition that all materials provided to a testifying expert are necessary for effective cross-examination and discoverable regardless of whether the testifying expert actually relies on it and regardless of whether the material

originates from a Rule 26(b)(4)(B) protected expert. Cases must always be read in the context of the factual situation existing in each individual instance.

*Eliasen* and the cases it cites are factually similar but not on point with the facts here. In *Eliasen*, the testifying expert received the non-testifying expert's report, considered same and rejected same. *Id.* at 400. The Court found the report concerning the fair market value of stock was part of the testifying expert's "input" when making his report. *Id.* at 399. In *Heitmann v. Concrete Pipe Machinery*, 98 F.R.D. 740 (E.D.Mo.1983), the testifying expert received and relied on the non-testifying expert's report. *Id.* at 743. The court was convinced by the testifying expert's deposition statements that he relied on the report in forming his own opinion and it thereby became a part of the basis for his opinion. *Id.* at 742. Only then, did it fall out of the coverage of Rule 26(b)(4)(B). In *Delcastor, Inc. v. Vail Associates, Inc.*, 108 F.R.D. 405 (D.Colo.1985), the testifying expert, who observed a landslide site almost two months later, read and relied on another expert's report. *Id.* at 408. The report concerned that expert's observations of the landslide site the day after it occurred and his opinion regarding its cause. *Id.* at 407. In *the Matter of Interco, Inc.*, 146 B.R. 447 (Bkrtcy.E.D.Mo.1992), concerned a non-testifying expert's report upon which the testifying expert relied, where the data in the report could not be reproduced. In all of these cases, further discovery (production of the report or deposition of the expert) was allowed to some degree.

In *Dunlop Tire and Rubber Corp. v. Pepsico*, No. 81–C–7079, 1985 WL 994 (N.D.Ill. April 29, 1985), the court reviewed the testifying expert's deposition and determined it did not show the expert's opinion relied on, was based on, or was the result of conversations with or a reading of the non-testifying expert's theories. The testifying expert's opinion "was his own, derived from both his own experience, as well as sources other than [the non-testifying expert]." *Id.* Therefore,

---

**2.** Identity of the expert and subject matter of the     testimony are not at issue here.

the protective order against a deposition was granted.

The facts of this case coincide better with *Dunlop* than the other cases. Here, the Cincinnati records were prepared based on the Cincinnati staff's examination and evaluation of plaintiff. The records were forwarded to Dr. Hirsch, a testifying expert. In his deposition, Dr. Hirsch admits he read the evaluation but dismissed it as not relevant to his own evaluation. (Defendant's Ex. 7, p. 14). Dr. Hirsch also dismissed the Cincinnati report because the testing procedures were different than his own, and because of a past history of inconsistencies between Cincinnati's test reports and his own evaluations. In effect, Dr. Hirsch never considered, let alone rejected, the Cincinnati report in making his evaluation:

> Q: But nevertheless, did you take [the report] into account at least to the extent of drawing a conclusion that it wasn't reliable?
>
> A: No. I could tell what it meant. In other words, since we have seen sometimes they are right, sometimes they are not right, you don't know. Since it's an unreliable report or our experience has been it's an unreliable report, we read it and said, "Okay. It's not important," set it aside and go from there.

Dr. Hirsch deposition (Defendant's Ex. 7), p. 15–16. Dr. Hirsch went on to say he would have considered the report "if the results from their evaluation were reliably reproduced...." *Id.* at 18. Instead of considering the Cincinnati examination of plaintiff, Dr. Hirsch performed his own examination.

Merely reading the report does not raise the inference Dr. Hirsch considered it during his own evaluation, any more than a fiction novel the doctor might have read the night before necessarily affected his evaluation (even if the novel turned out to be a true story). More to the point, Dr. Hirsch's deposition answers provide defendant with all the information essential to formulate an effective cross-examination concerning the Cincinnati records. The deposition testimony clearly indicates the Cincinnati report was not a basis, ground or "input" for the testifying expert's opinion and that the report was never even considered.

Defendant relies heavily on a footnote in *Eliasen* for the premise that even documents rejected by the testifying expert should be discoverable. However, whether the document was "considered" remains the key factor. A report may be sent, read, considered, and relied upon or rejected by the expert. To read Rule 26(b)(4)(A)(ii) as allowing discovery of every report or document sent to and read by the testifying expert, especially when the report is otherwise protected by Rule 26(b)(4)(B), would circumvent the purpose of the rule: limiting discovery. After all, an attorney sending documents to an expert may have no idea which documents are relevant and will be considered by the expert in preparing the expert's evaluation. Too expansive an application of Rule 26(b)(4)(A)(ii) will inhibit what an attorney may send to his expert and thereby hinder the assistance the expert is able to give. Therefore, finding discovery of a Rule 26(b)(4)(B) protected report, sent to and read by a testifying expert but not considered in forming his evaluation, to be an abuse of the discovery procedure is not inconsistent with *Eliasen* or the cases cited therein. Discovery of the Cincinnati reports will not be permitted under Rule 26(b)(4)(A)(ii) as the report is not essential for the cross-examination of the expert on facts known and opinions held.

### Rule 26(b)(4)(B): Exceptional Circumstances

As an alternate route to discovery of the Cincinnati records, defendant also argues that two exceptional circumstances open the door to discovery under Rule 26(b)(4)(B). This rule only permits discovery of facts known or opinions held by a non-testifying expert and then only as provided in Rule 35(b) (not applicable here) or upon a showing of exceptional circumstances. "A showing of exceptional circumstances requires the party seeking discovery to establish that it is impracticable for him to obtain the facts or opinions in the same subject by other means." *Perry v. Jeep Eagle Corp.*, 126 F.R.D. 542, 545 (S.D.Ind.1989). Obviously,

instances of exceptional circumstances are rare.

Defendant cites *Coates v. AC & S, Inc.*, 133 F.R.D. 109 (E.D.La.1990), for the holding that expert " 'shopping' is sufficient to fall within the Rule's exceptional circumstances exception." *Id.* at 110. However, the Court in *Eliasen* also touched on the subject. There the plaintiff hired Gruy and Touche as experts and chose to use Touche and not Gruy to testify:

> Even if we assume that plaintiffs chose not to use Gruy because he did not tell them what they wanted to hear, this is not only perfectly permissible, but as indicated above, the very purpose of the rule is to protect plaintiffs from having Gruy's testimony used by their opponent.

*Eliasen*, 111 F.R.D. at 401.

This Court chooses to side with the brethren from its own circuit. First, there is no real indication plaintiff is expert shopping here. Plaintiff saw doctors in Indianapolis, Cincinnati, Philadelphia and Chicago over a two-year period. As plaintiff is a doctor, one would expect colleagues at his own hospital in Indianapolis to be consulted. Plaintiff points out the Philadelphia visit was at the request of defendant. This leaves two consultations with experts, Cincinnati and Chicago (Dr. Hirsch). Visiting two experts for the purposes of litigation can hardly be considered "expert shopping." Furthermore, as Dr. Hirsch indicated, the Cincinnati evaluation is generally not considered reliable. If an expert botches the evaluation[3] or uses unaccepted methodology, a litigant should not be expected to live with only that evaluation and divulge the results for use by his opponent.

Second, there is no evidence the Cincinnati evaluation is unfavorable to plaintiff. For defendant to assert it is "a likely unfavorable determination" is speculative. Even if true, *Eliasen* indicates plaintiff should not be viewed negatively for going to another expert. Rule 26(b)(4)(B) "protects the retaining counsel's right to decide which of several retained experts to put on the witness stand

based on the expert's clarity of presentation, ability to withstand cross-examination, or other strategic concerns without fear that the non-testifying expert's information will get into the 'wrong hands.' " Note, *Blind Man's Bluff: An Analysis of the Discovery of Expert Witnesses Under Federal Rule of Civil Procedure 26(b)(4) and a Proposed Amendment*, 64 Ind.L.J. 925, 934 (1989). Finally, with the exception of *Coates*, no other case has found exceptional circumstances existed because plaintiff visited a number of experts. Exceptional circumstances do not exist where plaintiff visits two experts when preparing for litigation.

■ Defendant claims the second exceptional circumstance arises from an inability to discover equivalent information on the same subject by other means. Defendant asserts that the endoscopic exam done at Cincinnati likely reveals additional medical evidence which subsequent doctors are unable to observe due to an ongoing infection. Defendant's burden is to show circumstances such that he cannot get any facts or opinions on the subject in which he is interested from another source. 8 Wright & Miller, *Federal Practice and Procedure*, § 2032, p. 256 (1970). The most common instance of exceptional circumstances is when circumstances have changed so significantly that no reasonable opportunity to obtain the requested information exists. *See Delcastor*, 108 F.R.D. at 408 (subsequent experts were hampered by "drastically altered" landslide site).

Defendant has not established it is unable to obtain this information from another source or examination. Defendant claims one doctor was unable to view the "olfactory epithelium" due to an ongoing infection, yet the doctor's report does not confirm this. (Defendant's Ex. 9). The report does not indicate Dr. Lanza attempted to observe the "olfactory epithelium." There is some evidence that the "olfactory epithelium" is regularly not observable on an endoscopic exam or any other technique. (Plaintiff Ex. D, p. 54–56). Defendant has offered no evidence

---

**3.** This is by way of example only. There is no indication the Cincinnati experts did anything

wrong in this case.

that future examinations would be fruitless in that the nasal obstruction is permanent. Defendant has not adequately shown that no reasonable opportunity exists to obtain the substantial equivalent of the requested information by itself.

For the foregoing reasons, the Cincinnati records, created by non-testifying experts, are not discoverable either under Rule 26(b)(4)(A)(ii) as documents used by a testifying expert, or under Rule 26(b)(4)(B) exceptional circumstances.

## DR. WEISBERGER DOCUMENTS

■ Requests Two and Four seek documents sent or shown to Dr. Weisberger. Once again, defendant claims these documents are discoverable under Rule 26(b)(4)(A)(ii). Plaintiff's briefed objection centers on Rule 26(b)(3). It is true that the first sentence of Rule 26(b)(3) is subject "to the provisions of subdivision (b)(4) of this rule," and for the purposes of the Cincinnati records, the Court's analysis stayed within (b)(4). Unlike the Cincinnati records and Dr. Hirsch, plaintiff here has not disputed that Dr. Weisberger considered, and relied on or rejected, to some degree, the requested documents. The work-product doctrine can be waived if a witness, expert or lay, uses work-product materials to prepare his testimony:

> The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived.... Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*United States v. Nobles,* 422 U.S. 225, 239–240, 95 S.Ct. 2160, 2170–2171, 45 L.Ed.2d 141 (1975). Therefore, defendant is entitled to discover the work product under Rule 26(b)(4)(A)(ii) if Dr. Weisberger considered and/or used the documents to evaluate the facts and form opinions.

Regarding Dr. Weisberger's documents, however, plaintiff raises an additional objection on the basis of the second sentence of Rule 26(b)(3):

> In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

This provision applies even if the document is otherwise discoverable, under (b)(3) or (b)(4). The Supreme Court has made clear such information deserves special protection:

> It is clear that [an attorney's mental processes are] the sort of material the draftsmen of the Rule had in mind as deserving special protection. *See* Notes of Advisory Committee on 1970 Amendment to Rules, 28 U.S.C.App., p. 442 ("The subdivision ... goes on to protect against disclosure the mental impressions, conclusions, opinions, or legal theories ... of an attorney or other representative of a party. The *Hickman [v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)] opinion drew special attention to the need for protecting an attorney against discovery of memoranda prepared from recollection of oral interviews. The courts have steadfastly safeguarded against disclosure of lawyer's mental impressions and legal theories ...").

> Based on the foregoing, some courts have concluded that no showing of necessity can overcome protection of work product which is based on oral statements from witnesses....

> We do not decide the issue at this time. It is clear that the Magistrate applied the wrong standard when he concluded that the Government had made a sufficient showing of necessity to overcome the protections of the work product doctrine. The Magistrate applied the "substantial need" and "without undue hardship" standard articulated in the first part of Rule 26(b)(3).... As Rule 26 and *Hickman* make clear, such work product cannot be disclosed simply on a showing of substan-

tial need and inability to obtain the equivalent without undue hardship.

While we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability by other means than was made by the Government or applied by the Magistrate in this case would be necessary to compel disclosure.

*Upjohn Company v. United States,* 449 U.S. 383, 400–402, 101 S.Ct. 677, 688–689, 66 L.Ed.2d 584 (1981) (citations omitted). The protections of *Upjohn* would be shallow if not also applied to discovery under Rule 26(b)(4)(A)(ii). Therefore, it would be inaccurate to say that because work product is subject to (b)(4) discovery rather than (b)(3) discovery, the second sentence of (b)(3) does not apply to (b)(4)(A)(ii) discovery.

Accordingly, any document requested in Request Two or Four which contains facts or information Dr. Weisberger considered and/or used to evaluate and form his opinions shall be produced. This includes any Cincinnati records Dr. Weisberger may have considered or used. However, in order to protect his attorney's mental impressions, conclusions, opinions or legal theories, plaintiff shall be permitted to redact the documents to be produced. Any redactions shall be strictly limited to information protected by the second sentence in Rule 26(b)(3) since as previously determined, plaintiff has waived the work product protection of the first sentence to the extent he allowed a testifying expert, Dr. Weisberger, to consider or use them.

*SUMMARY*

The Motion to Compel the production of documents in Request Three is DENIED. The Motion to Compel as to Requests Two and Four is GRANTED as limited above and plaintiff is given twenty-one (21) days from the date of this order to comply.

### MOTION FOR DETERMINATION OF REASONABLE EXPERT WITNESS FEES

Defendant claims the fees charged by Dr. Hirsch for his deposition testimony are unreasonable and excessive. Rule 26(b)(4)(C)(i) requires unless manifestly unjust: "the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; . . ." Dr. Hirsch has billed defendant for four (4) hours at Eight Hundred Dollars ($800.00) per hour; and for four (4) hours at Eight Hundred Sixty Dollars ($860.00) per hour. This was for time spent at a deposition taken on May 22, 1992 and October 12, 1992, in Chicago, Illinois (near Dr. Hirsch's office). Defendant's law firm paid Dr. Hirsch Six Thousand Six Hundred Forty Dollars ($6,640.00) but preserved its right to challenge the fee. The sole question in dispute is whether Dr. Hirsch's fee is reasonable.

Many courts have stated that there is a paucity of decisions on this question and "'what little authority does exist does not supply the court with much guidance' in determining a reasonable fee for an expert witness." *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 495 (S.D.Iowa 1992). *Jochims* set out seven factors, modifying those in *Goldwater v. Postmaster General of the United States,* 136 F.R.D. 337 (D.Conn.1991), to be considered in determining the reasonableness of an expert's fee: (1) "the witness's area of expertise"; (2) "the education and training that is required to provide the expert insight which is sought"; (3) "the prevailing rates of other comparably respected available experts"; (4) "the nature, quality and complexity of the discovery responses provided"; (5) "the fee actually being charged to the party who retained the expert"; (6) "fees traditionally charged by the expert on related matters"; and (7) "any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Jochims,* 141 F.R.D. at 495–496.

However, no evidence for what a reasonable fee for Dr. Hirsch's appearance at the deposition has been presented by either side. Dr. Hirsch has not justified his considerable fee or his alleged high overhead. Defendant has not provided affidavits as to the prevailing rates from Dr. Mott, Dr. Doty or other comparable physicians. Therefore, this matter will be set for evidentiary hearing as

indicated in the last paragraph of this opinion.

## MOTION TO COMPEL PRODUCTION OF EXPERT WITNESS DOCUMENTS, OR IN THE ALTERNATIVE, MOTION IN LIMINE

There is no dispute the expert, Dr. Hirsch, must produce the documents. *See* Plaintiff's Response to Motion to Compel Production of Expert Witness Documents, p. 2. The only issue before the Court is whether the Four Hundred Sixty Dollar ($460.00) an hour fee Dr. Hirsch seeks to personally locate, retrieve, and copy the documents is reasonable as per Rule 26(b)(4)(C)(i).[4]

Again, the Court has no evidence as to what is a reasonable fee. No affidavits or statements from other physicians, medical file clerks or other clerical workers have been filed. Without such information, the Court would be picking a number out of the air. Therefore, this matter shall be set for an evidentiary hearing on April 15, 1993, at 9:00 a.m. for the purposes of determining a reasonable fee for Dr. Hirsch's appearance at the deposition and determining what are reasonable costs for retrieving and copying the requested documents. Meanwhile, Dr. Hirsch is hereby **ORDERED** to produce the requested documents in the most cost efficient manner justifiable but within a reasonable amount of time. The Motion in Limine is tentatively **DENIED.**

---

4. Dr. Hirsch claims his 1,500 to 2,000 patient files are not computerized, or even typed, but are handwritten by himself. The doctor's handwriting is allegedly so bad that only he can read the files and therefore only he can do the search.

Defendant responds, "As a result of Dr. Hirsch's inability to write legibly or to record this information in a form that can be retrieved by clerical personnel, Syntex has been denied access to documents which are critical to his opinion in this case unless it pays $460 per hour for what should be clerical search time. Parties seeking discovery should not be so penalized." (Defendant's Brief in Support, p. 7).