218

RAIL INTERMODAL SPECIALISTS, INC. (formerly known as CC & P Intermodal Corporation, an Iowa corporation), Plaintiff,

v.

GENERAL ELECTRIC CAPITAL CORPORATION, f/k/a General Electric Credit Corporation, a New York corporation, Defendant.

No. C 91–2086.

United States District Court, N.D. Iowa, E.D.

March 25, 1994.

---

David A. Ludtke, Rembolt Ludtke Parker Berger, Lincoln, NE, and Donald G. Thompson, Bradley & Riley, Cedar Rapids, IA, for plaintiff.

Mark McCormick and Mark E. Weinhardt, Belin Harris Helmick Tesdell, Des Moines, IA, for defendant.

### ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to plaintiff's March 3, 1994, motion to compel defendant to produce letters (docket number 62). Defendant resisted the motion on March 21, 1994. The court held a telephonic hearing on the motion on March 21, 1994. The motion is denied.

Plaintiff Rail Intermodal Specialists, Inc., formerly known as CC & P Intermodal Corporation (Intermodal), brought this action in

state court on October 18, 1991, against defendant General Electric Capital Corporation, formerly known as General Electric Credit Corporation (GECC). The case was removed to federal court on November 12, 1991. In its complaint, Intermodal alleges that GECC intentionally interfered with a contract between Intermodal and the Chicago, Central & Pacific Railroad (the Railroad). Jury trial is set in this matter for May 23, 1994.

The present dispute involves two letters dated January 18, 1994, sent by counsel for GECC to two expert witnesses retained by GECC for the purposes of rendering expert testimony in this litigation on Intermodal's alleged loss of business and damages. The court has reviewed these letters *in camera* and finds that they are almost identical to each other. At deposition of the experts on February 15 and 16, 1994, the experts produced documents they had relied upon in response to Intermodal's deposition notice and accompanying informal document request. However, counsel for GECC objected to the production of the letter sent to each expert and withheld those letters on the ground that they contained counsel's mental thoughts and impressions and, therefore, were protected work product. The experts each testified in deposition that they had relied on the letters in formulating their opinions in this matter. Intermodal therefore argues that the letters must be produced as material relied upon by experts and necessary to Intermodal's effective cross-examination of the experts regarding the bases of their opinions.

The Eighth Circuit Court of Appeals has not confronted the question of whether work-product protection is waived because work product is disclosed to experts retained in litigation. Decisions of other courts fall into three categories: those that rely upon the work-product doctrine to bar disclosure of communications between counsel and an expert witness; those that require disclosure of such communications to enhance discovery of expert opinions; and, finally, those that balance work-product protection against the need for disclosure of the grounds for expert testimony.

In *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir.1984), the Third Circuit Court of Appeals determined that protection of work product was the overriding concern in these situations. 738 F.2d 587, 595. The court reasoned that just because an "expert's view may have originated with an attorney's opinion or theory" does not warrant overriding the "strong policy" of protecting "core attorney's work product" from discovery. *Id.* The court further noted that

[t]he thrust of Rule 26(b)(4) is to permit discovery of facts known or opinions held by the expert. Examination and cross-examination of the expert can be comprehensive and effective on the relevant issue of the basis for an expert's opinion without an inquiry into the lawyer's role in assisting with the formulation of the theory.

*Id.* The court therefore established a procedure to protect "core work product:"

Documents claimed to contain legal theories fall within the small class of documents requiring *in camera* examination if the adversary is not satisfied with the attorney's claim of total work product protection.

After discussing both *Bogosian* and those cases requiring production of documents of the kind in question here, the court in *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*, 108 F.R.D. 283 (M.D.N.C.1985), concluded that controlling precedent in the Fourth Circuit provided that "an attorney's opinion work product is absolutely privileged under Rule 26(b)(3)…. In this Circuit, opinion work product is absolutely immune from discovery even if shared with an expert witness." 108 F.R.D. 283, 286 (citing *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir. 1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1974)).

At the other extreme are cases compelling discovery of materials similar to those in question here on the ground that *Fed. R.Civ.P.* 26(b)(4) requires discovery of the bases for an expert's opinion. The seminal case for this position is *Boring v. Keller*, 97 F.R.D. 404 (D.Colo.1983). The court found that

[one] reason which compels the discovery of work product information is that the purpose of F.R.Civ.P. 26 will be frustrated if these documents are held to be outside the scope of discovery. Rule 26(b)(4) provides that a party may discover "facts known and opinions held by experts," so that a party may prepare for cross-examination and impeachment of any prospective witness. Generally, courts have construed discovery rules liberally. With respect to discovery of the work product of a lawyer, the U.S. Supreme Court has stated that under certain circumstances, discovery of "written materials obtained or prepared by an adversary's counsel with an eye toward litigation" is permissible. The circumstances in which the written documents might be subject to discovery are where production is essential to the preparation of one's case, and where they might be useful for purposes of impeachment and corroboration. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *Id.* at 407–408. The *Boring* court also considered that an exception to the work product rule, resulting in a waiver of its protection, applied in certain circumstances.

[C]ourts have extended the expert witness exception and have held that a waiver of the privilege exists where counsel has delivered work product to an expert to be "useful to the client," but then withholds the material from an adversary who seeks to exploit the fact of this assistance in cross-examining the witness. *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y.1977); 10 Fed Proc.L.Ed § 26:48.... Accordingly, the opinion work product rule is no exception to discovery under circumstances where documents which contain mental impressions are examined and reviewed by expert witnesses before their expert opinions are formed. *In re IBM E.D.P. Devices Antitrust Litigation*, 77 F.R.D. 39 (N.D.Cal. 1977); *U.S. v. IBM Corp.*, 72 F.R.D. 78 (D.C.N.Y.1976).

*Id.*

In *Dominguez v. Syntex Laboratories, Inc.*, 149 F.R.D. 158 (S.D.Ind.1993), the court also concluded that protection against discovery of ordinary work product, as described in the first sentence of *Fed.R.Civ.P.* 26(b)(3), was waived to the extent that a party allows a testifying expert to consider or use such materials in formulating his opinion. 149 F.R.D. 158, 165. The court therefore ordered production of any documents, including documents prepared by counsel, which contain facts or information considered by an expert and/or used by the expert to evaluate and form his opinions. *Id.* However, in ordering production of such materials, the court allowed counsel to redact the documents to protect the attorney's mental impressions, conclusions, opinions or legal theories, on the basis of the second sentence of *Fed.R.Civ.P.* 26(b)(3), which requires the court to protect such matters from disclosure.

Another recent case has applied a sophisticated balancing test to determine whether to protect the work product of attorneys or to require thorough discovery of the basis of an expert's opinion, on grounds of "fairness." *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal.1991). In *Intermedics*, the court held

that, absent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product.

139 F.R.D. 384, 387. After a thorough analysis of both *Fed.R.Civ.P.* 26(b)(3) and (b)(4), the court concluded that "fairness" was at the center of the rationale for the rules governing discovery of work product and the basis for expert opinions. *Id.* at 390–91. The court rejected, again on fairness grounds, the conclusion that work product protection had been waived when counsel shares work product with a retained expert who is expected to testify. *Id.*

The *Intermedics* court therefore formulated an "open balancing analysis" in which the court must:

(1) identify the interests that the work product doctrine is intended to promote,

(2) make a judgment about how much those interests would be either (a) harmed by a ruling that the kinds of communications in issue here are discoverable or (b) advanced by a ruling that these kinds of communications are not discoverable, (3) identify the relevant interests that are promoted by Federal Rule of Civil Procedure 26(b)(4) and by Federal Rules of Evidence 702, 703, and 705, and then (4) make a judgment about how much those interests would be either (a) harmed by a ruling that the kinds of communications in issue here are *not* discoverable or (b) advanced by a ruling that these kinds of communications are discoverable.

*Id.* at 391–92.

■ The court would like to adopt either the *Bogosian* or the *Boring* line of cases because of the simplicity of their application and the clarity that would result for the bar. Generally speaking, a description of a case by an attorney to an expert witness containing opinion work product ought not to be subject to discovery even though it obviously reflects the bias of the attorney to some extent. After all, it is no secret that almost all retained experts will carry the same bias as counsel or they will not be retained. The assumptions relied upon by the expert can be probed by counsel without having counsel's opinion work product revealed to the cross-examining attorney. The court can envision circumstances, however, where the information relayed to the expert by the attorney cannot be adequately probed without disclosure of the work product. The court should retain the ability to require such disclosure under these circumstances. This court concludes that the balancing analysis formulated by the court in *Intermedics* is the most appropriate method for resolving the conflicting interests underlying the work product doctrine and the rules requiring discovery of the bases of expert opinions.

■ Work product protection is designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney" and recognizes that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hick-*

*man v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844, 846 (8th Cir.1988); *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). Discovery of materials that contained counsel's mental thoughts and impressions would invade precisely that zone of privacy the work product doctrine was designed to protect.

■ The court finds that the potential for revelation of counsel's mental thoughts and impressions here is slight. Counsel presented the experts with straight-forward recitals of the parties' positions and requested their opinions in general terms. Counsel did not suggest either an analytical approach or the opinions he wished to receive. The court concludes that the interests behind the work product doctrine would not be significantly advanced by barring discovery or harmed by requiring discovery of the letters. However, that is only the beginning of the analysis.

The court must next identify the relevant interests that are promoted by *Fed.R.Civ.P.* 26(b)(4) and by *Fed.R.Evid.* 702, 703, and 705. The discovery of the basis of expert opinions was intended to cure the

> evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand.... Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

Notes of Advisory Committee on *Fed. R.Civ.P.* 26(b)(4), 1970 Amendment. The advisory committee notes on the rules of evidence suggest that there is a similar concern with effective cross-examination and rebuttal of expert testimony by admitting facts or data underlying an expert opinion in order to

reveal "partisan bias," Notes of the Advisory Committee on *Fed.R.Evid.* 705, 1972 Proposed Amendment, and by allowing the jury as far as possible to reach its own conclusions on the basis of the facts known to the jury except where expert evaluation of those facts is helpful, Notes of Advisory Committee on *Fed.R.Evid.* 702, 1972 Proposed Rules.

The court concludes that these interests would not be significantly harmed by a ruling that the kinds of communications in issue here are *not* discoverable or advanced by a ruling that these kinds of communications are discoverable. Having reviewed the letters *in camera*, it is clear to the court that Intermodal has no substantial need for the information contained in the letters in order to mount effective cross-examination or rebuttal of GECC's experts. The information contained in the letters is available to Intermodal from the experts themselves or from other documents already available to Intermodal as the result of the extensive discovery conducted in this case. While it will obviously be difficult for Intermodal to accept this without seeing the letters, the court concludes that they are *extremely* benign in terms of their potential for influencing expert testimony.

The court concludes on balance that protection of the interests behind the work product doctrine outweighs the interests in discovery of this material in this case. The letters in question here need not be produced.

Upon the foregoing,

IT IS ORDERED

That plaintiff's March 3, 1994, motion to compel defendant to produce letters (docket number 62) is denied.