Danny DOUGLAS, Individually and Personal Representative of the Estate of Betty Douglas Deceased, and Danny Douglas Individually, Plaintiff,

v.

The UNIVERSITY HOSPITAL, St. Louis University Medical Center, et al., Defendants.

No. 91–1966–C(9)(CDP).

United States District Court, E.D. Missouri, E.D.

July 21, 1993.

Karen E. McDonald, Mundy and Holt, Washington, DC, for plaintiff.

Philip L. Willman, Partner, Moser and Marsalek, St. Louis, MO, for St. Louis University and Camilo R. Gomez, M.D.

Gordon Keith Phoenix, Managing Partner, Stephen J. Potter, Sandberg and Phoenix, St. Louis, MO, for St. Mary's Health Center, Thomas Reardon, M.D., O. Machke, M.D., Eddie Bulk, D.O. and Paul Jones.

### MEMORANDUM AND ORDER

PERRY, United States Magistrate Judge.

This matter is before the Court on various matters following a hearing on all pending motions held on June 29, 1993. The case was referred to the undersigned for trial and all other purposes with consent of the parties pursuant to 28 U.S.C. § 636(c). It is set for trial before the undersigned and a jury on September 27, 1993.

On September 13, 1988, Betty Douglas died. Her son, Dr. Danny Douglas, has filed suit against St. Louis University, Dr. Camilo Gomez, St. Mary's Health Center, Dr. Thom-

as Reardon, Dr. Otakar Machke, Dr. Edward Paulk, and Dr. Paul Jones claiming that his mother's death was the result of negligence. Dr. Douglas' primary theory is that defendants failed to administer subcutaneous heparin to his mother. Dr. Douglas seeks damages for negligence and wrongful death, and seeks to hold St. Louis University and St. Mary's Health Center liable on the theory of respondeat superior.

### 1. *Deposition of Dr. Margulies*

Defendants St. Louis University and Gomez have filed a motion to compel the completion of the deposition of Sheldon Margulies [# 62], as have defendants SSM Rehabilitation Center, Reardon and Machke [# 76]. Plaintiff has filed a motion for sanctions [# 86] which relates to the same issue, and defendants SSM, Reardon and Machke responded to that motion by filing their own motion for sanctions [# 96].

Dr. Margulies is a physician who is also an attorney, although it appears that he does not practice law,[1] but does practice medicine. Before filing suit plaintiff's counsel provided Dr. Margulies with certain of plaintiff's medical records, and Dr. Margulies on October 20, 1989, provided a written opinion to counsel, which states, among other things: " ... negligence still fails because at least a sizeable minority (and perhaps a majority) do not use subcutaneous heparin, ..." Plaintiff has now designated Dr. Margulies as an expert witness who will opine at trial that defendants were, in fact, negligent for failing to prescribe heparin in this case.

Plaintiff's counsel did not provide the October 20, 1989 Margulies letter in response to discovery requests, but during the deposition of Dr. Kornfeld, another of plaintiff's expert witnesses, the document was provided to defendant's counsel along with other documents in Dr. Kornfeld's file, after plaintiff's attorney had reviewed Dr. Kornfeld's file and removed any papers she considered privileged communications. (Kornfeld Depo. at pp. 77–80.) Plaintiff's counsel did not know that this letter was included in the production. Dr. Kornfeld testified, however, that he did not agree with the conclusions of Dr. Margulies, apparently referring to the conclusions of non-negligence.

At Dr. Margulies' deposition, plaintiff's counsel indicated that she was withholding certain correspondence from production based on a claim of attorney work product, and specifically designated certain other correspondence of Dr. Margulies, but she did not initially list the damaging document as one she was withholding. When defense counsel inquired whether Dr. Margulies had ever rendered any opinions "about the subject matter of this lawsuit that are different from what you've told us here today," Dr. Margulies answered that he could not answer because that was "work product," and plaintiff's counsel subsequently ordered him to answer no questions concerning his former opinions and conclusions. Defendants did not disclose that they had the damaging letter, but plaintiff's counsel learned they had it either because Dr. Margulies saw it at the conclusion of his deposition (as plaintiff's motion for sanctions states), or because counsel simply surmised that defense counsel must have it from the line of questioning (as plaintiff's counsel stated at the hearing). After a recess in the deposition, plaintiff's counsel indicated that, in fact, there was an additional, pre-suit document that was being withheld from production based on work product claims. (Margulies Depo. at p. 44.)

Defendants seek to compel the resumption of Dr. Margulies deposition, and an order compelling him to answer questions concerning his prior opinion. They seek to have plaintiff pay all costs of this continued deposition, including counsel's travel expenses in taking the deposition. Plaintiff seeks an order imposing monetary sanctions on defendants for their "abuse of the discovery process" in obtaining the document and failing to tell her that they had it. Plaintiff's counsel now maintains that the letter and any communications she had with Dr. Margulies before suit are protected from discovery on grounds of both attorney-client privilege and

---

1. *See* footnote 2 of plaintiff's May 21, 1993 response to defendants' motion to compel the completion of Dr. Margulies' deposition wherein plaintiff states that Dr. Margulies had only just passed the Maryland Bar when plaintiff contacted Dr. Margulies for advice.

attorney work product, and argues that Dr. Margulies should not be cross-examined on this prior opinion at trial.

Plaintiff's argument is that she sought legal, as opposed to medical, advice from Dr. Margulies prior to filing suit, and that the letter is no more than his legal opinion, as a lawyer, that a negligence claim would fail. She contends it is not in conflict with, or in any way relevant to, his current "medical" expert opinion that defendants were negligent in failing to prescribe heparin. In the opinion of the undersigned, these arguments do not pass the "straight face test", but if counsel wishes to present them to a jury in defending her expert witness at trial, she will have the opportunity to do so. What she may not do, however, is withhold the prior inconsistent opinion from discovery in this case, and Dr. Margulies must be presented for further deposition testimony, at plaintiff's expense. The reason for this ruling is as follows.

■ First, any common sense reading of Dr. Margulies' letter shows that he is providing a medical opinion regarding whether the defendants were negligent in failing to provide heparin. Plaintiff's argument that because he uses the term "negligence" instead of "standard of care" in the letter does not change the fact that he opines that a claim would fail because many, if not most, doctors in the defendants' situation would not have prescribed heparin. That statement clearly refers to standards of care, not to a legal conclusion regarding the entire tort of negligence, and it directly contradicts the opinion he is expected to present at trial and has presented in his deposition. Plaintiff's argument that she hired him because he was a lawyer, and was seeking legal advice, is belied by the language of the letter itself.

■ Second, even assuming that plaintiff initially hired Margulies as the type of non-testifying expert consultant contemplated by Rule 26(b)(4)(B), Fed.R.Civ.P., whose opinions may not be discovered except upon a showing of exceptional circumstances, she later waived any right to withhold that information by designating him as a testifying expert witness. Although it is true that discovery may not be had of expert consultants who are not hired to testify (barring exceptional circumstances), once such an expert is designated as a testifying expert, his opinions and the bases for those opinions are subject to cross-examination, and an obviously proper subject of cross-examination is whether he ever formed or expressed contradictory opinions.

■ Moreover, even if Margulies was originally retained as a non-testifying expert, once plaintiff turned the October 20, 1989 letter over to Kornfeld, and Kornfeld reviewed the letter in forming his opinion, the letter became discoverable. *See, e.g., Heitmann v. Concrete Pipe Machinery*, 98 F.R.D. 740, 743 (E.D.Mo.1983). Documents prepared by a non-testifying expert which are "considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by the [trial expert]." *Eliasen v. Hamilton*, 111 F.R.D. 396, 400 (N.D.Ill.1986). Thus, by analogy, if the Margulies letter is discoverable to promote the cross-examination of Kornfeld, Margulies himself should be obliged to justify his conversion.

■ *Heitmann* and *Eliasen* resolve another aspect of this issue by their holdings. Since the Margulies letter was discoverable, it matters not how defendants came into possession of the letter. Plaintiff should have knowingly produced the letter in discovery. Plaintiff thus cannot now be heard to complain that the letter was improperly used to surprise his expert.

### 2. *Scope of Plaintiff's Testimony*

All parties have filed motions relating to the scope of plaintiff's expected trial testimony, including plaintiff's two motions in limine filed on March 22, 1993 [## 49 & 50], SSM & Reardon's motion to bar [# 58, filed 4/27/93] and motion to strike the plaintiff from offering expert opinions at trial [# 59, also filed on 4/27/93], in which defendants St. Louis University and Gomez seek to join [# 68], and St. Louis University and Gomez's motion in limine to prohibit plaintiff from introducing into evidence opinion testimony by the plaintiff [# 70].

■ The issue presented by the parties' cross-motions regarding the scope of plaintiff's testimony at trial is whether plaintiff may testify as a passionate son on the one hand, and as a dispassionate expert on the other. Defendants contend that he should not be allowed to state expert opinions because he is not impartial. Plaintiff argues that he should not be cross examined about whether he made inquiries of the defendants concerning their treatment of his mother before her death.

The parties have cited only one case, *Viterbo v. Dow Chemical Company*, 646 F.Supp. 1420 (E.D.Tex.1986), *aff'd*, 826 F.2d 420 (5th Cir.1987) for the proposition that an expert must be "impartial" in order to provide opinion testimony. *Viterbo* is not persuasive authority in this case, because in that toxic tort case the court rejected the proffered expert testimony in large part because of the unreliability of the bases for the opinions; one opinion was based on unscientific testing, and the other was made by a psychologist with no training in toxicology or any other field of medicine. Although the court there stated that the "most important" factor was that the psychologist had sought out the plaintiff's attorneys and therefore had become an advocate for the case, it clearly appears that the expert was simply not qualified to render a causation opinion, whether he was an advocate or not.

Rule 702, Federal Rules of Evidence, does not contain a requirement that an expert be impartial in order to render an opinion. Rather, the rule allows opinion testimony wherever the specialized knowledge of the witness will "assist the trier of fact." Employees of a party are allowed to testify as experts, *see e.g., Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174, *corrected in nonpertinent part*, 645 F.2d 511 (5th Cir.1981); *Rust Engineering Company v. Lawrence Pumps, Inc.*, 401 F.Supp. 328, 334 (D.Mass. 1975), and law enforcement officers are frequently allowed to testify in criminal trials that, for example, a certain method of record-keeping is indicative of drug dealing, *see e.g., United States v. White*, 890 F.2d 1012, 1014 (8th Cir.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990).

A case directly on point but not cited by either party is *Tagatz v. Marquette University*, 861 F.2d 1040 (7th Cir.1988), where plaintiff was a specialist in statistical evidence in employment discrimination cases and was allowed to present his own statistical evidence in support of his own age and religious discrimination claims. The Court of Appeals did not specifically determine whether the practice was proper, because no objections had been raised below and because it affirmed the defendant's judgment for other reasons, but noted that no rule or case law had been found prohibiting a plaintiff from providing expert testimony. In discussing the issue, Judge Posner stated: "The trier of fact should be able to discount for so obvious a conflict of interest." The undersigned agrees with this reasonable conclusion, and defendants will have adequate opportunity to bring plaintiff's obvious bias to the attention of the jury for its evaluation.

Plaintiff, as a doctor, may be qualified to testify as an expert on the use of Heparin, and defendants have not challenged plaintiff's qualifications. They have challenged the basis for his opinion, because he has testified that he formed his opinion immediately after learning of his mother's death, and without benefit of any review of her medical records. The testimony provided, however, does not show that he lacked any basis for forming the opinion, and the evidence of his quick formation of his opinion is a matter for cross-examination. Defendants' motions to strike plaintiff from offering expert opinions at trial will therefore be denied.

■ Plaintiff's motion in limine will also be denied, however. Plaintiff opens the door to a wide range of questions which go to the weight and to the credibility of his testimony by testifying as an expert witness as well as a plaintiff. The areas that plaintiff seeks to exclude, including plaintiff's conversations with his mother's treating physicians, go not only to the issues regarding his expert testimony, but also may be relevant to his claimed damages for wrongful death.

■ Defendants' motion to bar will be denied without prejudice. When plaintiff answered interrogatory No. 20 on February 25,

1993, he stated that the scope of his expert testimony would be limited "to the need for prophylactic anticoagulation to prevent deep venous thrombosis and subsequent pulmonary thromboembolism in stroke patients at risk for both as constituting the standard of care." Plaintiff never supplemented this interrogatory response.[2] *See* Rule 26(e)(1)(B), Fed.R.Civ.P. Defendants argue that plaintiff should be permitted to provide his expert opinion only to the extent of his interrogatory response. *See Carter v. Moog Automotive, Inc.*, 126 F.R.D. 557, 559 (E.D.Mo.1989). Defendants contend that plaintiff should be so limited because they were unable to prepare adequately for plaintiff's cross-examination at his deposition. Defendants did, however, extensively cross-examine plaintiff at the deposition. It is therefore not apparent that defendants have been prejudiced. Moreover, plaintiff's trial testimony will be limited to the scope of plaintiff's complaint, so, to whatever extent plaintiff exceeded the scope of his complaint at his deposition, this testimony will not be admitted at trial.

### 3. *Scope of Dr. Kornfeld's Testimony*

Defendants argue that the expert testimony of Dr. Kornfeld likewise should be limited to testimony:

> that the failure to administer heparin in this instance was below the standard of care and that said failure significantly reduced the chance of survival in this patient by increasing the risk of thrombosis in this patient.
>
> (b) The facts relied upon by this expert are the medical history of this patient as reflected in the patient's chart and the practical experience of this expert.
>
> (c) The grounds for the opinion are summarized in the article which plaintiff produced in discovery entitled: *Effects of low-dose subcutaneous heparin on the occurrence of deep vein thrombosis in patients with ischemic stroke.*

(Interrogatory response # 20.)

▮▮▮ As with plaintiff's prospective trial testimony, Dr. Kornfeld will be limited to the scope of the complaint, regardless of how he may have testified at his deposition. Plaintiff's complaint alleges that every defendant breached the standard of care in treating plaintiff's mother. Plaintiff alleges that the breach "included, but was not necessarily limited to" defendants' failure to engage in "early heparinization of venous thrombosis." (Complaint at ¶ 26.) Defendants argue that Dr. Kornfeld ranged far afield from the complaint in testifying that defendants failed to properly examine the decedent, failed to ask the decedent questions, failed to properly ambulate the decedent, failed to examine the decedent for evidence of deep venous thrombosis ("DVT"), and failed to make proper treatment recommendations. Defendants further argue that Kornfeld should not be permitted to testify that defendants were negligent because a non-defendant nurse failed to contact a physician and that St. Louis University was negligent because it failed to have an internist follow up on the decedent's progress during her admission to St. Louis University Hospital.

The undersigned is not prepared to say, at this juncture, that the bulk of Kornfeld's testimony exceeded the scope of plaintiff's complaint, or the scope of Kornfeld's interrogatory response, for that matter. Much of Kornfeld's testimony could reasonably be regarded as necessary background for his ultimate opinions. Plaintiff's whole theory rests on the fact that his mother was not given subcutaneous heparin, and she should have been. In order to defend against plaintiff's theory defendants will argue that heparin was not reasonably medically necessary. Plaintiff thus must counter that the use of heparin was necessary, and had defendants asked the right questions, properly examined the decedent and otherwise treated her properly, they would have prescribed the subcutaneous heparin. Much of Kornfeld's testimony appears relevant. Defendants' motion will therefore be denied, but defendants may, obviously, reraise these objections at appropriate times during the trial testimony.

---

**2.** On May 18, 1993, plaintiff's attorney sent the Clerk of this Court two copies of an amended answer to an interrogatory regarding Dr. Kornfeld, but there is no record of plaintiff's amending his answer with respect to his own testimony.

#### 4. *Gomez Motion in Limine*

Defendant Gomez seeks an order precluding plaintiff from eliciting evidence that defendant Gomez initially failed the written board certification examination [# 69]. Defendant is a board certified physician who failed one portion of the written exam on the first test, but passed it on his second attempt, and passed the oral portion of the test on his first attempt. Defendant argues that this evidence is not relevant, and that any probative value it might have is substantially outweighed by the danger of unfair prejudice. This is a question commonly asked of physician expert witnesses, and a physician defendant's board certification or lack thereof is often also brought out in evidence.

The evidence is obviously relevant to the jury's assessment of an expert witness's competence to opine, but has little, if any, relevance to the issue whether the defendant complied with the standard of care required in his treatment of the decedent in this case. Were Gomez simply testifying as an expert witness, the question would be allowed, because his general skill and expertise would be relevant to the jury's determination of the weight to be given to his opinions. Here, however, the jury is not being asked to determine whether Gomez is a qualified physician or is competent generally, or whether he is competent to express an opinion, but rather must determine whether the treatment Gomez rendered in this instance breached the relevant standard of care. That is a question of historical fact, to be determined by the jury from the evidence of what Gomez did or did not do, and the evidence regarding the standard of care required. Whether he is board certified and whether he took more than one time to pass the board certification test are not relevant to this dispute, and any possible relevance is substantially outweighed by the potential prejudice from the evidence. Therefore defendants' motion in limine will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of St. Louis University and Gomez to compel the completion of the Margulies deposition [# 62] and the motion of SSM, Rear-don, and Machke to compel the completion of the Margulies deposition [# 76] are granted.

**IT IS FURTHER ORDERED** that plaintiff must bear the reasonable costs of defendants' having to file the motions to compel the completion of the Margulies deposition and plaintiff must bear defendants' reasonable all costs associated with the completion of this deposition, including the travel costs of defendants' counsel. Thus, to this extent, defendants' motion for sanctions [# 86] is granted; it is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion for sanctions [# 96] is denied.

**IT IS FURTHER ORDERED** that the motion to join [# 68] filed by defendants Gomez and St. Louis University Medical Center is granted.

**IT IS FURTHER ORDERED** that the motion to strike plaintiff from offering expert opinions [# 59] is denied.

**IT IS FURTHER ORDERED** that the motion to bar plaintiff from offering certain expert opinions [# 58] is denied without prejudice.

**IT IS FURTHER ORDERED** that the motion in limine to bar plaintiff from offering certain expert opinions [# 70] is denied without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motions in limine [# 49 and # 50] are denied.

**IT IS FURTHER ORDERED** that defendant Gomez' motion in limine [# 69] is granted.