**In the Matter of INTERCO INCORPORATED, et al., Debtors.**

**In re CONVERSE, INC., General Electric Company, Claimants.**

**Bankruptcy No. 91–40451–172.**
**Motion No. 2–147.**
**Claim Objection No. 64.**
**Joint Admin. No. 91–40442–172.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Oct. 20, 1992.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Jeffrey J. Davidson, Stephen A. Jonas, Jamie Lewis Keith, Hale and Dorr, Boston, Mass., for General Electric Co.

Joel A. Kunin, East St. Louis, Ill.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

On June 29, 1992, General Electric Company ("Claimant") filed a motion requesting that this Court order "that the deposition of Goldberg–Zoino and Associates, Inc. ("GZA") not take place." *General Electric Company's Motion for Protective Order,* filed June 29, 1992, p. 1. Claimant asserts

"GZA is a non-testifying expert retained by [Claimant] in anticipation of litigation with [Debtor] and, as such, neither facts known nor opinions held by it may be discovered without the showing required" under Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure, as made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure. *Id.* at 2. Claimant also requests that this Court "order the debtor to pay [Claimant's] fees and expenses in connection with bringing this Motion." *Id.* Alternatively, Claimant requests that the Court order Debtor "to pay GZA its fees for its time in preparing for and giving the deposition; and ... to pay [Claimant] one-half of the $18,230.00 in GZA fees and expenses paid by [Claimant] to obtain the facts and opinions of GZA on this matter." *Id.*

Debtor argues that it is entitled to depose GZA because "GZA was *not* hired in anticipation of litigation within the meaning of Rule 26(b)(4)(B)." *Memorandum in Opposition to General Electric Company's Motion for Protective Order,* filed July 9, 1992, p. 1. Debtor also asserts that Claimant "has waived any right to shield GZA from deposition discovery because its testifying experts have relied heavily on GZA's work as the basis for their opinions." *Id.* Finally, Debtor argues that "even if GZA were considered an expert hired in anticipation of litigation, GZA's unique role in gathering facts pertaining to the site at issue is an 'exceptional circumstance' which requires that its deposition be allowed to go forward." *Id.*

### I. *Factual Background*

Goldberg–Zoino and Associates, Inc. ("GZA") is an environmental consulting firm. In 1986, Claimant contracted with GZA to perform a "preliminary site investigation" at "50 Fordham Road Property Wilmington/North Reading, Massachusetts." *See Phase II Report 50 Fordham Road Property Wilmington/North Reading, Massachusetts,* attached as Exhibit A to Memorandum in Opposition to General Electric Company's Motion for Protective Order, filed July 9, 1992. Debtor asserts

that Claimant hired GZA to perform the preliminary site investigation as part of a "response action" after the Massachusetts Department of Environmental Protection issued a Notice of Responsibility to Claimant "in response to contamination detected in the Stickney Well, the water source for the Town of North Reading, Massachusetts, which adjoined the GE plant at 50 Fordham Road ..." *See* Memorandum in Opposition, 1–2. According to Debtor, GZA's investigation involved compliance with the Massachusetts Superfund Act, M.G.L. c. 21E and its implementing regulations, the Massachusetts Contingency Plan 310 C.M.R. Part 40. In particular, Debtor asserts Claimant hired GZA to perform a "Phase II—Comprehensive Site Assessment." *Id.*

Debtor contends that as part of GZA's Comprehensive Site Assessment investigation, GZA "performed an historical investigation and gathered data" regarding alleged petroleum contamination at 55 Fordham Road, which Converse and the Converse Rubber Co. leased from Claimant during the period 1972–1985. *Id.* In connection with the investigation at 55 Fordham Road, "GZA focused its investigation on one underground tank, which is now characterized as 'Tank K', and concluded that Tank K was the source of the alleged petroleum contamination." *Id.* at 2–3.

Claimant agrees that GZA was originally hired by GE "in connection with contamination at 50 Fordham Road, Wilmington Massachusetts ..." *Affidavit of Stephen A. Jonas,* filed June 29, 1992, at 2. However, Claimant contends that "[i]n 1989, GE and Hale and Dorr [counsel to GE] specifically retained GZA to investigate contamination around the former Tank K, in anticipation of litigation with Converse over paying the costs of cleaning up the contamination." *Id.*

Claimant asserts that "GZA will not testify in this case." *Id.* Rather, Claimant intends to use Wehran Engineering Corporation as its testifying expert. *Id.* The parties agree that Claimant has given Debtor "full and unconditional access to the reports issued by GZA." *Memorandum in Opposition,* 5–6.[1] In addition, Claimant has provided Debtor with a copy of the report generated by the testifying expert, Wehran Engineering.

## II. *Application of Rule 26(b)(4)(B)*

Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure provides for discovery of an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial. "Under its provisions, a party may discover facts known or opinions held by such an expert only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B) notes of the advisory committee on the 1970 amendment. The purpose of Rule 26(b)(4)(B) is to prohibit a party from building its own case through the use of an opponent's financial resources and diligence. *Cox v. Piper, Jaffray & Hopwood, Inc.,* 848 F.2d 842, 845 (8th Cir.1988) (citing *Ager v. Jane C. Stormont Hosp. and Training School for Nurses,* 622 F.2d 496, 502 (10th Cir.1980)).

The Debtor has argued here that the testifying expert, Wehran Engineering has "relied extensively on the historical investigation of the site performed by GZA and on data compiled by GZA." *Memorandum in Opposition,* p. 3. According to the report of Wehran Engineering:

Wehran has used data as they were presented [by GZA]. No validation of the data presented or referenced in the Phase II report or the methods used to collect them has been conducted as part of this supplemental investigation.... There are potential limitations arising from integration of data that have been collected over a period of years with respect to a description of current site conditions. Potential limitations may include varying sampling and analytical methods, reporting techniques, differ-

1. Debtor also asserts "the GZA reports are on file publicly with the Massachusetts Department of Environmental Protection." *Memorandum in Opposition,* p. 5.

ences in sample matrices, or temporal changes in site conditions, for example. *Phase II Supplemental Investigation For the Former General Electric Facility,* attached as Exhibit C to Memorandum in Opposition.

■ Claimant asserts that it has provided GZA's report to the Debtor, and that the report contains the "technical data (sampling methods, location, procedures, assumptions, and results) on which [Debtor] wishes to depose GZA ..." *Reply* at 4. However, it is not clear from the portions of the GZA reports which have been provided to the Court whether or not those reports contain all or most of the information concerning the methodology used by GZA. To the extent Wehran Engineering prepared its report (and perhaps its testimony) in reliance on the methodology developed by GZA, these circumstances qualify as 'exceptional' under Rule 26(b)(4)(B). *See Pearl Brewing Co. v. Jos. Schlitz Brewing Co.,* 415 F.Supp. 1122, 1138–1139 (S.D.Tex. 1976). Therefore, to the extent information regarding the methodology used by GZA is unavailable or inadequate, Debtor should be entitled to depose a GZA representative.

Further, Wehran Engineering apparently relied on certain factual data compiled by GZA. Due to the passage of time between the GZA investigation and the supplemental Wehran Engineering report, Wehran acknowledges:

"the integration of the data from this and prior investigations is subject to some limitations. For example, temporal changes in surface or subsurface conditions may have occurred between 1989 and 1991 and sampling and analytical methods may have varied over this time period."

Exhibit C, at 35. Due to any changes resulting from the passage of time, it would probably be impossible for Debtor's expert to recreate the conditions observed and/or tested by GZA, which were relied upon by Wehran Engineering.

This Court finds that there is no practicable alternative method by which Debtor can obtain the information concerning the phys-

ical condition of the allegedly contaminated site which Wehran Engineering relied on and incorporated in its investigation and report. Therefore, Debtor is entitled to depose a representative of GZA to the extent necessary to obtain that information.

Under the circumstances presented here, it is not unfair to Claimant to allow the GZA deposition to be conducted. First, such deposition shall be limited in that the inquiries shall be confined to the areas in which Wehran Engineering utilized data and methodology provided by GZA. In addition, Debtor "does not seek in this case to avoid the expense of compensating expert witnesses or to develop its own case entirely out of the mouth of its adversary's expert witness." *Pearl Brewing,* 415 F.Supp. at 1138. Rather, Debtor seeks "to discover the mechanical methods, tests, procedures, assumptions and comparisons which will support the conclusions of ... the trial expert." *Id.* Finally, this Court notes that it would be unfair to Debtor to deny discovery of the physical conditions observed or tested by GZA because such physical conditions certainly have undergone some changes since GZA's report and it would be impracticable, if not impossible for Debtor's expert to recreate those conditions.

### III. *Fees and Expenses*

■ Claimant contends that "should the Court permit the deposition, GZA and [Claimant] are entitled to their fees and expenses." *Memorandum in Support* at 4. In particular, Claimant argues Debtor should pay one-half of the $18,230.00 Claimant paid to GZA "to do its Tank K work." *Id.* at 5.

The Rule concerning fees to be paid to expert witnesses provides as follows:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for the time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) ... with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court *shall* require, the party seeking

discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Fed.R.Civ.P. 26(b)(4)(C) (emphasis added).

Under this Rule, Debtor must pay GZA "a reasonable fee for the time spent in responding to discovery[.]" Fed.R.Civ.P. 26(b)(4)(C). In addition, because this Court has ordered discovery under subdivision (b)(4)(B), Debtor is required to pay Claimant "a fair portion of the fees and expenses reasonably incurred by [Claimant] in obtaining facts and opinions from [GZA]." *Id.* This Court shall defer ruling on the amount which constitutes a "fair portion" until the conclusion of the deposition, at which time Claimant may submit a request for fees and expenses. The parties are directed to cooperate and attempt to agree as to an amount which constitutes a fair portion, taking into consideration the degree to which the testifying expert relies upon the report and information provided by the nontestifying expert. Therefore

IT IS ORDERED that the motion for an order directing that the deposition of Goldberg–Zoino and Associates, Inc. not take place is denied.