**John Wesley GOVAN, Plaintiff,**

v.

**YALE CAROLINAS, INC., et al., Defendants.**

**Case No.: 1:15–CV–624–VEH**

United States District Court, N.D. Alabama, Eastern Division.

Signed December 15, 2015

---

Michael D. Petway, Roger K. Fuston, Fuston Petway & French LLP, Birmingham, AL, for Plaintiff.

Christopher J. Zulanas, David T. Gordon, Friedman Dazzio Zulanas & Bowling PC, Birmingham, AL, David F. Daniell, Daniell Upton & Perry PC, Daphne, AL, William J. Ricci, Ricci Tyrrell Johnson & Grey PLLC, Philadelphia, PA, for Defendants.

*ORDER*

VIRGINIA EMERSON HOPKINS,
United States District Judge

This case comes before the court on the National Liability and Fire Insurance Company's ("NLFIC") Motion for protective Order. (Doc. 50). For the reasons stated herein, the motion will be **DENIED**.

## I. FACTUAL BACKGROUND

This case arises from a February 18, 2014, on-the-job accident that injured the plaintiff, John Wesley Govan. According to the complaint, while operating a "fork lift" or "lift truck," Govan suffered a crushing injury when he was pinned between the body of the lift truck and a steel support beam. (Doc. 1–1 at 6). Govan was an employee of Temp Force[1] at the time of the accident, and was working on the premises of JX Nippon Oil & Energy Lubricants America, LLC. ("Nippon Oil").

According to the submissions on the motion, NLFIC is the worker's compensation insurance carrier for Temp Force, and it has paid significant sums for Govan's medical treatment and rehabilitation. NLFIC was notified of Govan's accident within 2 hours of its occurrence. It then contacted Jerry Keel, of Associated Insurance Administrators ("AIA") to investigate. Keel was at the accident site within 4 hours of the accident. By the time Keel reached the scene, the lift truck had been moved to a different location in the warehouse from where the accident occurred, and Govan had been moved from the place where he had been injured. Keel interviewed Govan's employer and his co-workers, had the lift truck positioned at the site of the accident in an attempt to recreate the scene, and extensively photographed both the accident site and the placement of the lift truck at the site. NACCO Materials Handling Group, Inc. ("NACCO") alleges that the photographs "were taken by Keel within hours of the accident during an accident reconstruction performed at the request of

1. NACCO Materials Handling Group, Inc. ("NACCO"), in responding to the motion, states that Govan's employer was "Smart Staffing." (Doc. 54 at 2). The true name of Govan's employer is of no consequence in resolving this

motion, as it is clear that, whoever it was, NLFIC was its insurer. Because the complaint states that the employer was Temp Force, the court will continue to use that name.

Keel at the site, presumably based upon his interviews with [the plaintiff's] employer and/or [his] co-workers." (Doc. 54 at 3).

It is Keel's investigation which is the subject of the instant discovery motion. In its motion, NLFIC states:

> On November 25, 2015, Defendant NACCO ... issued a notice for the deposition of Jerry Keel ... to take place on December 16, 2015. Mr. Keel is a subrogation investigator retained by National Liability and Fire Insurance Company in anticipation of litigation who is not expected to testify at trial. Therefore, the facts known or opinions held by Mr. Keel are not discoverable, and Intervenor–Plaintiff National Liability and Fire Insurance Company moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c) to quash[ ] Mr. Keel's deposition.

(Doc. 50 at 1–2). NACCO responds that NLFIC has proffered the report and opinions of Richard M. Ziernicki, who *is* expected to testify as an expert witness for NLFIC.[2] According to NACCO, Ziernicki's opinions are based on models, which in turn were created using the photographs taken by Keel. (Doc. 54 at 3). The response also notes that Ziernicki "has never been to the scene," and that his "opinions relating to causation due to alleged product defect are based upon (in substantive part) ... Keel's photographs and interviews at the site." (Doc. 54 at 4).

Attached to NACCO's response to the motion are at least some of the pictures (many of which have been altered somewhat by the use of 3D superimposition or other effects) taken by Keel during his investigation. (Doc. 54–3). The response also notes that the photographs taken by Keel "have been produced by NLFIC, and are contained in [Ziernicki's report]." (Doc. 54 at 3; doc. 54–3 at 1–5).

Also attached to NACCO's response to the motion is a document entitled "CLAIM INVESTIGATION," apparently created by Keel, in which he records his actions and conversations on February 18, 2014. (Doc. 54–4).[3] The document recounts that Keel first spoke with Ray Hornsby, the owner of Temp Force, who told him that the accident had occurred. Hornsby told him that "Govan was working in the warehouse and became trapped between a forklift and a metal pole causing internal injuries. (Doc. 54–4 at 1). When Keel arrived at the accident scene, Hornsby

> showed [him] marks on the floor where he believes Mr. Govan was attempting to turn around when he collided with a metal post (shelving leg). He said that Mr. Govan was trapped between the post and the lift he had been operating.

(Doc. 54–4 at 1).

The report also notes that, among other people, Keel also spoke with Ricky Smith, the Deputy Operations Manager for Nippon Oil at the time. Keel's report states:

> I asked Mr. Smith to walk me through the incident. He said that Mr. Govan had been moving pallets of oil into the warehouse and placing them on a shelving unit on aisle "17[.]" He said that Mr. Govan had just placed a pallet on the end of the aisle he believes on the third shelf from the ground. He said Mr. Govan was backing up the aisle and ended up backing into the shelving unit causing Mr. Govan to become pinned between the lift and a metal pole. He said he doesn't know if Mr. Govan was attempting to turn around in the aisle when he hit the pole or just veered off course. No one could explain

---

**2.** According to NACCO, Ziernicki has issued an opinion

> that leading up to the accident, the lift truck traveled from a stopped position for approximately 15 feet to the point of rest at which [the plaintiff's] body was found pinned between the lift truck and the vertical post. Mr. Ziernicki opines (among other things) that if the lift truck had been equipped with an upright post on the right side of the operator's compartment, this upright post would have impacted a horizontal cross member on the shelving unit

as the lift truck was in motion, preventing the lift truck from traveling a course so as to permit [the plaintiff's] body to become pinned between the vertical shelving post and the lift truck body.

(Doc. 54 at 3).

**3.** It is not clear whether this document was produced to NACCO as part of Ziernicki's expert report, in response to a discovery request, or in some other way.

how Mr. Govan came off the lift and became trapped. He said that Mr. Govan was working alone in the warehouse and there were no witnesses that could explain how it happened.

(Doc. 54–4 at 1). NACCO alleges that this document shows that Keel received "conflicting information" during his interviews.

There is no evidence that Keel has ever formed or offered any opinions or conclusions as a result of his investigation.

## II. ANALYSIS

NACCO wishes to depose Keel

concerning the conflicting information he received from persons at the site, identification of marks on the floor which were pointed out to him by [the plaintiff's] employer immediately after the accident, and the positioning of the truck for the photographs taken by Keel the day of the accident.

(Doc. 54 at 5). As noted above, NLFIC seeks a protective order pursuant to Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure to prevent that from occurring.

■ Rule 26(b)(4)(D) provides that

[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). By its terms, this rule only applies to "facts known or opinions held *by an expert*." Other than to merely assert that "Mr. Keel is an expert" because he was hired to investigate "whether

or not there are any third parties potentially responsible for causing an accident" (doc. 50 at 4), NLFIC has made no showing in this regard. The point is by no means uncontested, as NACCO argues that Keel "is merely a collector of facts and a creator of evidence (photographs) which form the underlying basis for critical expert opinion(s) formed by others." (Doc. 54 at 6). As shown above, there is no evidence that Keel formed or rendered any opinion in this matter, or did anything more than merely take pictures and interview witnesses. Why that makes him an "expert witness" in this matter, as opposed to an investigator, has not been explained by the movant.[4] For that reason alone, NLFIC has not satisfied its burden and the motion is due to be denied.

■ Alternatively, even assuming that Keel is an expert, to the extent that Ziernicki prepared his report in reliance on the investigation conducted by Keel, these circumstances qualify as "exceptional" under Rule 26(b)(4)(D). *See, Matter of Interco Inc.*, 146 B.R. 447, 450 (Bankr.E.D.Mo.1992) (*citing Pearl Brewing Co. v. Joseph Schlitz Brewing Co.*, 415 F.Supp. 1122 (S.D.Tex.1976)). As the Eleventh Circuit has stated:

This court has set out three requirements that an expert must meet before his opinions may be admitted. First, the expert must be qualified on the matter about which he intends to testify. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998). Second, he must employ reliable methodology. *Id.* Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue. *Id.* With respect to whether an expert's methodology is reliable, we look to a number of factors, including (1) whether the methodology can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential

---

**4.** Although the movant cites one, non-binding case in its brief, that case merely stands for the proposition that such investigations are "in anticipation of litigation" as that phrase applies to the *work product* protections of Rule 26(b)(3). *See, Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D.Ga.2008). That portion of Rule 26 has not been argued here. Even if it had, in the instant case NACCO seeks to *depose* Keel. Rule 26(b)(3) only applies to "documents and tangible things." Fed. R. Civ. P. 26(b)(3)(A). It appears that NLFIC has already produced to NACCO documents and photographs prepared by Keel in his investigation.

rate of error of the methodology employed, and (4) whether the methodology is generally accepted. *Daubert [v. Merrell Dow Pharmaceuticals, Inc.]*, 509 U.S. [579] at 593–94, 113 S.Ct. [2786] at 2797 [125 L.Ed.2d 469 (1993)]. This list of factors is not meant to be exhaustive, nor must each factor be present in a given case. The proponent of the expert opinion must carry the burden of establishing qualification, reliability, and helpfulness. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

*Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1329 (11th Cir.2014) *cert. denied,* —— U.S. ——, 135 S.Ct. 1423, 191 L.Ed.2d 386 (2015). An examination of the above cited factors in this case certainly would focus, at least in part, on the basis for Ziernicki's opinion—the photographs taken by Keel. Ziernicki, not having taken the photographs, indeed never having been to the scene of the accident, would not be able to answer any questions about how they were taken, why they were taken in the manner chosen by Keel, or why the lift truck was positioned in the photographs as it was. Only Keel would have that information. The motion is due to be denied for this addition reason as well.

Keel also recorded that there were marks on the floor at the scene of the accident. These marks likely are not there any longer. NACCO claims that, before it received Keel's report, these "marks on the floor" had not been previously identified. (Doc. 54 at 5). Because Keel saw the marks, and that evidence likely no longer exists, this too is an exceptional circumstance warranting Keel's deposition on that issue.

Finally, to the extent that Keel interviewed anyone during his investigation, and that interview impacted, in any way, evidence which was ultimately provided to Ziernicki, Keel may be questioned regarding it.

## III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED,** and **DECREED** as follows:

1. The motion for protective order is **DENIED.**
2. The scheduled deposition of Keel may go forward.

**DONE** and **ORDERED** this 15th day of December, 2015.